HADFIELD (RHODES v.). See Case No. 11,-748.

## Case No. 5,894.

### In re HADLEY.

[12 N. B. R. 366.] [1]

District Court, E. D. Michigan. 1875.

BANKRUPTCY—PETITION FOR ADJUDICATION—VALUE OF DEBTS OF PETITIONERS — STOPPAGE OF PAYMENT OF COMMERCIAL PAPER — PREFERENCE —AFFIDAVIT BY ATTORNEY — WARRANT OF ARREST.

1. In computing the number of creditors who must join in a petition for adjudication, creditors whose respective debts do not exceed two hundred and fifty dollars, are not to be reckoned; but in computing the amount or value of creditors all should be included. The aggregate of petitioners' debts must be equal to one-third of all the debts, irrespective of the amount, provable against the estate.

[Cited in Re Bergeron, Case No. 1,342; Re Currier, Id. 3,492. Followed in Re Woodford, Id. 17,972; Re Broich, Id. 1,921. Cited in Re McAdam, Id. 8,654; Re Lloyd, Id. 8,429; Roche v. Fox, Id. 11,974.]

2. The nature of petitioners' debts should be so far stated in the petition that the court may see they are provable against the estate.

3. The depositions in proof of debt are intended to support the allegations of the petition, not to supply defects in them.

4. The forms prescribed by the supreme court should be followed as closely as the circumstances will permit.

5. Under the amendment of 1874 [18 Stat. 178], the general allegation that the debtor "being a merchant and trader, fraudulently stopped payment" is sufficient, without alleging that the stoppage was of commercial paper. The clause was intended to cover the fraudulent stoppage of the payment of debts generally.

6. Where a fraudulent stoppage of payment of commercial paper is alleged, the pleader may aver a general stoppage of payment without describing any paper, or he may aver the non-payment of a particular piece of paper, describing it, and rely upon it as prima facie evidence of a general stoppage.

7. Where a preference is alleged it is not necessary to state that such preference was in fraud of the bankrupt act [of 1867; 14 Stat. 517], but the name of the person preferred should be set forth.

8. Where a petition is verified by an attorney, the non-residence of his principal should be alleged directly and not by way of recital.

9. The allegations in the deposition in proof of the act of bankruptcy should be made upon the personal knowledge of the deponent and should make out a prima facie case. Such alle-

[1] [Reprinted by permission.]

gations should be made by separate deposition and not in the petition itself.

[Cited in Ex parte Lane. 6 Fed. 39.]

10. Facts relied upon to justify a warrant of arrest and seizure should not be set forth in the creditors' petition.

On exceptions to creditors' petition. The several grounds of exception are stated in the opinion of the court.

J. G. Dickinson, for debtor.
W. S. Edwards, for creditors.

BROWN, District Judge. I shall proceed to dispose of the several exceptions in the order in which they are taken.

First. That it does not appear by the petition that the requisite number of creditors have joined. The allegation in the petition is that the petitioners "constitute one-fourth in number of the creditors of the said Joseph F. Hadley, and that said above-mentioned indebtedness amounts to at least one-third of the debts provable against the said debtor, under the bankrupt act and the amendment thereto." Immediately following this, however, is the further allegation "that the indebtedness of the said Hadley, as shown by his books, and from statements made by him, amounts to upwards of fourteen thousand three hundred dollars." The aggregate of debts set forth in the petition is four thousand seven hundred and fifty-three dollars and sixty-three cents, which is one-third of fourteen thousand two hundred and sixty dollars and eighty-nine cents. There is no statement as to the number of persons to whom the indebtedness of Hadley is owing, and the general allegation that the petitioners constitute one-fourth in number must be presumed to be true, and is sufficient; but by a comparison of the figures above given it appears that the aggregate of their demands does not equal one-third of the indebtedness as set forth in the petition. It was suggested upon the argument that much of this indebtedness consists of debts of less than two hundred and fifty dollars in amount, and that the aggregate of petitioners' claims, being so nearly one-third of the entire amount, the court might presume there were enough debts below two hundred and fifty dollars which should be excluded to make the petitioners' one-third in amount. This argument is based upon the theory that in computing both the number and the amount of creditors, only those whose respective debts exceed two hundred and fifty dollars shall be reckoned. I am aware that such was the ruling of the learned judge of the Southern district of New York in Re Hymes [Case No. 6,986]. It was held in this case that where the petition was filed on behalf of creditors holding provable debts exceeding the sum of two hundred and fifty dollars, to ascertain whether the amount of provable debts held by them is equal to one-third in amount, only

the provable debts of creditors which exceed two hundred and fifty dollars must be reckoned, and the requirement of the statute is satisfied if the debts due to such petitioning creditors equal one-third of the provable debts due to creditors holding provable debts exceeding the sum of two hundred and fifty dollars, and that it was not necessary that the amount of debts of the petitioning creditors should be equal to one-third of all the provable debts. I was much struck with the force of the reasoning of the learned judge upon this question, but upon more mature consideration I find myself unable to concur in his opinion. I think a comparison of the several provisions of section 39, as amended in 1874, indicates the design of congress to exclude the smaller creditors only in estimating the one-fourth in number by personal enumeration, and that in computing the amount the aggregate of their debts must be equal to one-third of all the debts, irrespective of amount, provable against the estate. In mentioning the proportion of creditors who must join in instituting or compromising proceedings in bankruptcy, the word "number" is constantly used in contra-distinction to "amount." For example, in speaking of cases commenced since December, 1873, the same section provided that "if such allegation as to the number or amount of petitioning creditors be denied by the debtor," the court shall require him to file forthwith a full list of his creditors, and ascertain whether "one-fourth in number and one-third in amount" have petitioned; but if the debtor "shall admit in writing that the requisite number and amount of creditors have petitioned," the court shall so adjudge, "and if it shall appear that such number and amount have not so petitioned," the "court shall grant time within which others may join;" and if at the expiration of the time so limited the number and amount shall comply with the requirements of this section, "the matter may proceed, but if such number and amount shall not answer the requirements of the section the proceedings shall be dismissed." Near the close of the section follows the provision in question. "In computing the number of creditors, as aforesaid, who shall join in such petition, creditors whose respective debts do not exceed two hundred and fifty dollars shall not be reckoned." If congress had designed to exclude the smaller creditors in computing the amount who should join, it seems very singular they should not have used the language "in computing the number and amount of creditors," instead of using merely the word "number," since the distinction between "number" and "amount" is constantly kept in view in the prior clauses of the section. The same distinction is preserved in the language of section 40, which provides that "if the court shall be satisfied that the requirement of section 39, as to the number and

amount of petitioning creditors, has been complied with," or if creditors "sufficient in number and amount shall sign such petition, so as to make a total of one-fourth in number and one-third in amount of the provable debts, as provided in said section, the court shall so adjudge." Additional support is found for this view in the language of section 41, with respect to the discontinuance of bankruptcy proceedings, which may be entered upon the assent, in writing, of the debtor, "and not less than one-half of his creditors in number and amount." Section 43 also provides for a supersedeas of proceedings in bankruptcy by a resolution of three-fourths in value of the creditors, and further provides that "such resolution shall, to be operative, have been passed by a majority in number and three-fourths in value, and shall be confirmed by two-thirds in number and one-half in value, and in calculating the majority for the purposes of a composition, under this section, creditors whose debts amount to sums not exceeding fifty dollars shall be reckoned in the majority in value but not in the majority in number." By this clause congress clearly indicated its intention that, in determining whether a composition should be effected by a majority in value of all the creditors, even the smallest in value must be reckoned, but only those whose debts exceed fifty dollars should be reckoned in determining the majority in number. I do not see how the court can assume in this case that any of the creditors making up the sum of fourteen thousand three hundred dollars hold claims of less than two hundred and fifty dollars, but even if it could do so it would not change the result upon my view of the construction of this section.

Second. That it is not stated in said petition what is the nature of the debts set forth therein. The allegation of the petition is that the demands "each exceed the amount of two hundred and fifty dollars, and the nature of your petitioners' demands are as follows: Accounts." Here follows the name of each creditor and the amounts. No detailed statement of the petitioners' demand is necessary in a creditor's petition, but form No. 54 seems to contemplate that it should be so far stated that the court may see that it is a provable debt. It was argued that the court had a right to look at the deposition in proof of the debt and to consider it as a part of the petition for that purpose. This court, however, held in the Case of McKibben [Case No. 8,859], that the petition should be a complete pleading in itself, and should contain all the requisites necessary to make out a case, and that the depositions were intended to support the allegations in the petition, and not supply defects in them. General order 32 provides that the "several forms specified in the schedules * * * shall be observed and used with such alterations as may be neces-

sary to suit the circumstances of any particular case." I think these forms should be followed wherever it is practicable to do so, and should be complied with as closely as the circumstances of the case will admit of. And this, I believe, has been the rule adopted in most of the districts. See Hunt v. Pooke [Case No. 6,896].

Third. That the first act of bankruptcy charged is insufficient, in that it alleges only that the debtor, "being a merchant and trader, fraudulently stopped payment," without alleging that he stopped payment of his commercial paper. The clause upon which this section is based, as originally enacted, read as follows: "Who being a banker, merchant, or trader, has fraudulently stopped or suspended, and not resumed payment of his commercial paper, within a period of fourteen days." So many different interpretations were given to this section that in 1870 [16 Stat. 276], it was amended so as to read, "who, being a banker, broker, merchant, trader, manufacturer, or miner, has fraudulently stopped payment, or who has stopped or suspended, and not resumed payment of his commercial paper, within a period of fourteen days." In Case of Hercules Mut. Life Ins. Soc. [Case No. 6,402], it was held by Judge Blatchford: (1) If the debtor were a banker, broker, merchant, trader, manufacturer, or miner, he might be put into bankruptcy for the fraudulent stoppage of the payment of his debts generally, whether such debts were commercial paper or not. (2) That the latter clause, "who has stopped or suspended and not resumed payment of his commercial paper within a period of fourteen days," applied to all persons whether of the classes enumerated or not. I entertain very grave doubts whether this construction was correct, but whatever conflict of opinion may have existed with reference to the clause as it then stood, I think the last amendment to the section in 1874 has removed the difficulties. It now reads, "who being a bank, banker, broker, merchant, trader, manufacturer, or miner, has fraudulently stopped payment, or who, being a bank, banker, broker, merchant, trader, manufacturer, or miner, has stopped or suspended, and not resumed payment, within a period of forty days, of his commercial paper." I think that congress intended to provide by this that any person who has fraudulently stopped payment of his debts generally may be adjudicated a bankrupt. What would constitute a stoppage of payment is usually easy to determine. The closing of the doors of a banking-house, a general assignment for the benefit of creditors, or any other act which, in common parlance, is termed a "failure," would be evidence of such stoppage; whether it would be fraudulent or not would depend upon the circumstances of each case. I think this allegation sufficient.

Fourth. That although the second act

charges that the debtor, being a merchant and trader, fraudulently stopped payment of his commercial paper within a period of forty days, to wit, a certain draft, it does not appear that there was any fraud in the stoppage of payment, nor that the paper was actually the commercial paper of the said Hadley, and made by him in his character of merchant or trader, nor that it was ever presented for payment, and that payment was ever demanded. The petition charges that "at Holly, in said district, on the 25th of March, 1875, the said Hadley, being a merchant and trader, has fraudulently stopped payment of his commercial paper within a period of forty days, to wit: a draft drawn by Watrous, Boyden & Co., for the amount of one hundred and thirty dollars, due and payable on or about the 25th of March, 1875, and duly accepted by the said Hadley, said draft still remaining unpaid." I think this allegation sufficient. It is substantially a compliance with the forms. It is not necessary that the facts constituting the fraud should be set forth in the allegation of the act of bankruptcy, although it must appear in the deposition in proof of the act. So, the allegation that it was the commercial paper of Hadley, and made by him as a merchant, need not be averred except in general language, although these facts should be made to appear by deposition. The allegation of stoppage may be made in two forms: The pleader may set up a general stoppage of payment without describing any paper, or he may aver the stoppage of a particular piece of commercial paper, and rely upon it as prima facie evidence of a general stoppage. McLean v. Brown [Case No. 8,880]; In re Hercules Mut. Life Ins. Soc. [supra]; In re McNaughton [Case No. 8,912]; In re Wilson [Id. 17,780]. In the latter case he must describe the paper sufficiently to identify it. In re Randall [Id. 11,551]. Although this allegation does not give the date of the draft in question, still I think it sufficiently describes it to identify it, and is sufficient to prevent the party from being misled.

Fifth. That although the third act charged sets up a payment by way of preference, it is not stated or charged that such payment or preference was in fraud of the provisions of the bankrupt act or the amendments thereto. I do not think that such allegation is necessary. The act does not provide in express terms for it, nor do the forms seem to contemplate the insertion of any such allegation. I think, however, the count is defective in not stating the name of the person who was intended to be preferred by the payment of the money in question. This the form contemplates, and I think good pleading requires.

Sixth. That the petition is not properly verified. Objection is made that it is verified by an attorney of the petitioners instead of the petitioners themselves. The amendments of 1874 provide, however, that "if any of the said first five signers shall not reside in the district, the petition may be verified by the oath of the attorney or agent of the signers." But it does not appear in the verification that the first four signers, for whom the attorney signs the petition, are not residents of the district, and no authority appears for the signatures of the attorney. It is true that in the introductory portion of the petition the first four signers are described as of the cities of Rochester and Utica, in the state of New York, but I do not think that such description can be regarded as direct affirmation of the fact. The fifth signer is the firm of Hitchcock, Esselstyn & Co., of Detroit. The sixth signer is Isaac Sloman, of Rochester, and the seventh signer is the firm of Swartout, Ackerman & Co., of Syracuse, New York. The petition is verified by one of the firm of Hitchcock, Esselstyn & Co., in person, and by Mr. Edwards, who purports to sign for the first four petitioners, but I think the verification is fatally defective in failing to aver that they are non-residents of the district.

Further objection is made that the allegations in the petition are not supported by the depositions. The first deposition is that of William S. Edwards, who swears generally to the several acts of bankruptcy contained in the petition, but only upon information and belief. I think that a deposition in proof of an act of bankruptcy should be made upon the personal knowledge of the deponent. I would not say here that every fact contained in the deposition should be made upon personal knowledge; but if any fact whatever is stated upon information and belief it should be made with such particularity and detail that the court may see from whom the information was derived, the circumstances under which it is acquired, and the weight that should be attached to it. In the deposition in question, however, not only are all the facts stated upon information and belief, but they are stated in the most general terms, not specifying how, from whom, when and where the information was derived; and, in fact, it is substantially a rehearsal of the allegations in the petition. No weight whatever can be attached to it. The other deposition is that of Cornelius J. Reilly, who swears that on the 21st of May he visited Holly for the purpose of investigating Hadley's affairs; that he saw and conversed with him; that in his conversation Hadley stated that about one month previously he had taken an inventory of his stock, which showed his assets to be about eleven thousand dollars, and his liabilities about thirteen thousand dollars; that that was his present condition, except that he had sold about one thousand dollars worth of goods. To deponent's question as to what had been done with the money realized from the sale of these goods, he replied that he had paid the Merchants' National Bank about five hundred or six hundred dollars, and that the president of the bank was a relative of his. There is nothing in this depo-

sition to support any of the acts of bankruptcy charged, except possibly the preference to this bank. There is nothing to indicate a general stoppage of payment, or even the non-payment of the draft in question, much less that such non-payment was fraudulent in its character. Although I do not think it necessary that the petitioners should anticipate any defense in their depositions or make out anything more than a prima facie case, still there must be enough to justify the court in putting the party upon his trial. There are, it is true, certain facts recited in the petition itself, following the several allegations of bankruptcy, but the form seems to require that such allegations should be contained in a separate deposition, and the practice has been uniform in that regard. It follows from this that the order to show cause must be vacated, with which, of course, will follow the warrant of arrest and seizure.

The facts set forth in the petition as above stated were relied upon in part to justify the issuing of a provisional warrant. This court held in Case of McKibben [Case No. 8,859], that the prayer for a warrant of arrest might be incorporated in the petition, and that, if sufficient grounds appeared in the depositions to justify the issuing of the warrant, it would not be quashed because a separate petition was not filed, although such separate petition was deemed the better practice. I have never known, however, of the facts relied upon in support of the warrant being incorporated in the petition, and do not approve of the practice. The facts stated in this petition are set forth with great looseness and generality, many if not most of them upon information and belief, and the petition is verified by one petitioner and by an agent of four others. Of course every fact stated in the petition of the parties' own knowledge must be held to be within the knowledge of each person verifying the petition. A case will very rarely arise where six or eight persons, or even two persons, will have personal knowledge of every fact set forth in a long statement of this kind, and to allow such statement to be made in this general way, and to be verified by several persons, is giving sanction to a looseness of practice which ought not to be tolerated. I think that in every case the facts in support of the warrant of arrest and of the order to show cause should be set forth in separate depositions, and, as above indicated, I think the better practice is to file a separate petition for the warrant. It results that the petition must be dismissed, and the order to show cause and the warrant of arrest be vacated.